IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| JOE ANGEL ACOSTA, III, | § | |
| TDCJ-CID NO. 1408833, | § | |
| Plaintiff, | § | |
| v. | § | CIVIL ACTION NO. H-10-0074 |
| | § | |
| OFFICER POPLE, *et al.,* | § | |
| Defendants. | § | |

## OPINION ON DISMISSAL

On January 4, 2010, plaintiff Joe Angel Acosta, proceeding *pro se* and *in forma pauperis*, filed a civil rights complaint pursuant to 42 U.S.C. § 1983, alleging violations of his constitutional rights by employees of the Texas Department of Criminal Justice-Correctional Institutions Division ("TDCJ-CID") and University of Texas Medical Branch ("UTMB") employees at the Connally Unit, the Garza Unit, and the Darrington Unit of TDCJ-CID. (Docket Entry No.1). Plaintiff arranged his complaint in five claims, which correspond to the dates of his incarceration at the various units. The Court transferred the case to the United States District Court for the Western District of Texas because a substantial part of the events giving rise to plaintiff's claims (Claims 2, 3, and 4) occurred in Karnes County, Texas, within the jurisdiction of that court. (Docket Entry No.6). The San Antonio District Court dismissed the claims plaintiff raised against Connally Unit defendants Morales, Bright, Monroe, Wallace, Nunez, Masters, Gonzales, Barbosa, Aguero, Brunsen, Peterson, Ramirez, Gloor, Puelma, Brown Cornoado, Wagner, Smith, Gribbins, and Garcia, and transferred the case back to this Court. (Docket Entry No.25).

1

For the reasons to follow, the Court will dismiss the complaint pursuant to 28 U.S.C. § 1915(e)(2)(B).

I. BACKGROUND

Plaintiff is presently serving a five year sentence for a 2006 retaliation conviction in Aransas County, Texas in cause number A-06-5184-CR.  TDCJ-CID website.[1]  Plaintiff claims when he arrived at Garza Unit of TDCJ-CID on January 16, 2007, he was identified as a member of a Security Threat Group ("STG") based on documentation from an earlier incarceration showing his affiliation with a gang.  For this reason, plaintiff was placed in administrative segregation ("ad-seg").  (Docket Entry No.1, Claim 1).  Thereafter, plaintiff attempted to show that he had given testimony against his former gang and requested that he be placed in protective custody.  (*Id.*).  Plaintiff's request was denied and he encountered problems with former gang members in ad-seg.  (*Id.*).  He filed numerous grievances and was referred to the Gang Renunciation and Disassociation ("GRAD") program, by which he could renounce gang membership and earn release from ad-seg.  (*Id.*).  Plaintiff was unfamiliar with the GRAD program and was not told that he would have to waive rights to participate in the program.  (*Id.*).  He also informed medical personnel on the Garza Unit about his numerous medical conditions.  (*Id.*).

Sometime in mid-2007, plaintiff was transferred to the Connally Unit of TDCJ-CID, where he continued to press for protective custody and experienced the same hardships.  (*Id.*, Claim 2).  In April 2008, plaintiff filed a civil rights complaint in which he raised the same claims regarding his confinement in ad-seg on the Garza and Connally Units of TDCJ.[2]  *Acosta*

---

[1] http://168.51.178.33/webapp/TDCJ/InmateDetails.jsp?sidnumber=04348293

[2] Plaintiff complained that Warden D. Mooneyham of the Garza Unit confirmed his gang-member status on January 16, 2007, using invalid and incomplete records from 1997.  *Acosta v. Castro*, Civil Action No.5:08-0350-OLG (W.D. Tex. May 28, 2008) (Docket Entry No.2)..  He further complained that Connally Unit Warden Bright held

2

*v. Castro*, Civil Action No.5:08-0350-OLG (W.D. Tex. May 28, 2008) (Docket Entry No.2). As in the present complaint, plaintiff objected to his assignment in administrative segregation as a gang member and sought protective custody and damages from TDCJ. *Id*. at Document 7. The Court found that plaintiff failed to state an actionable claim regarding his classification and he alleged no physical injury. Consequently, plaintiff's complaint was dismissed with prejudice pursuant to 28 U.S.C. § 1915(e)(2)(B) as legally frivolous and for failure to state a claim. *Id.*

In October 2008, plaintiff was bench warranted to Nueces County for a trial on two misdemeanors, one of which had been enhanced to a felony. (Docket Entry No.1, Claim 2). Plaintiff entered a guilty plea on December 11, 2008. (*Id*.).

He returned to the Garza Unit, an intake unit, on December 29, 2008, where he was confirmed as a member of the Mexican Mafia. (*Id.*, Claim 3). Plaintiff continued to protest the gang member designation and sought removal from ad-seg. (*Id*.). He anticipated that he would not be assigned to a unit because he was eligible for release to mandatory supervision in the spring of 2009. (*Id*.) On April 22, 2009, he returned to the Connally Unit, where he was placed in the GRAD program and housed in ad-seg. (*Id.*, Claims 3 and 4).

On July 22, 2009, plaintiff appeared before the state classification committee ("SCC") for an annual STG hearing. (*Id.*, Claim 4). Although he denied membership in a STG and requested to be placed in safe-keeping, SCC members determined that he should remain in his current status until July 2010. (*Id.*). Plaintiff grieved the classification decision in Step 1 Grievance No.2009205411 and requested placement on a safekeeping unit; he was told to submit his request to the SCC. (*Id.*). He filed a Step 2 Grievance requesting a unit classification committee ("UCC") hearing, which was denied. (*Id.*). Plaintiff was informed in response to the

---

him in ad-seg as a gang member and that Regional Director Castro refused to release him from ad-seg and to acknowledge that his life was in danger. *Id.*

grievance that his institutional adjustment record had been reviewed and he was appropriately classified. (*Id*.).

Plaintiff was transferred to the Ramsey I Unit on August 24, 2009, where he was met by GRAD Sgt. Hecht, who took him to a holding cell and confiscated his property for inventory. (*Id*., Claim 5). Plaintiff was then taken to a UCC hearing chaired by Assistant Warden Turrubiarte and attended by two other officers. (*Id.*). Plaintiff's travel folder had not arrived so the UCC panel did not know why he was there. (*Id.*). Plaintiff explained his situation to the panel and told them that he thought he had been transferred to protective custody. (*Id.*). Turrubiarte, however, became agitated and placed plaintiff in transit until plaintiff's file was located. (*Id*.).

Later the same day, plaintiff was placed in the GRAD program and assigned to the general population. (*Id.*). He remained in the program for ten days. (*Id.*). Everyday he spoke to Sgt. Brennan about safety concerns because he recognized former gang members, who he feared would spread rumors that he was a snitch. (*Id.*). He also did not like the authority given to other inmates and grieved the practice. (*Id.*). On September 1, 2009, Brennan requested that plaintiff sign a form renouncing his gang membership, which was required to continue in the GRAD program. (*Id.*). Plaintiff would not agree to waive certain rights which he felt made him subject to physical harm from gang members and refused to sign the form. (*Id.*). Thereafter, he was removed from the GRAD program.

On September 3, 2009, plaintiff submitted a written petition explaining his situation to Major Jackson, Mrs. Chavez, and Mrs. O'Guin, who were presumably UCC members. *(Id.).* Chavez and O'Guin wanted to recommend plaintiff to protective custody but Jackson did not. (*Id.*). No one on the panel addressed the threats that plaintiff mentioned in his petition. (*Id*.). Thereafter, plaintiff was placed in transit. (*Id.*).

4

Plaintiff wrote to several administrators, including Warden Regans, Senator Whitmire, and Sgt. Brennan and requested another hearing. (*Id.*). The letter to Regans was returned, and plaintiff grieved the failure to respond. Warden Turrubiarte took no action on his Step 1 Grievance. Likewise, administrators Jeff Baldwin, John Moriarty, Tina Rodriguez, and Steve Massie took no action on plaintiff's petitions. (*Id.*).

While his grievance was pending, plaintiff was transferred to the Eastham Unit. (*Id.*). On November 17, 2009, the Eastham UCC panel recommended that plaintiff be placed in protective custody but the SCC denied the recommendation. (*Id.*). Plaintiff was placed back in ad-seg. (*Id.*). Thereafter, plaintiff filed the pending suit.

Plaintiff contends that he was denied due process, equal protection, and subjected to deliberate indifference to his safety by the cursory UCC hearing on the Ramsey I Unit, by his placement in the GRAD program, and by the refusal of administrators and classification panel members to respond favorably to his petitions or their failure to respond at all. (*Id.*).

## II. STANDARD OF REVIEW

The complaint in this case is governed by the Prison Litigation Reform Act ("PLRA"). Because plaintiff is a prisoner who proceeds *in forma pauperis*, the PLRA requires that the district court scrutinize the basis of the complaint, and, if appropriate, dismiss the case at any time without service of process if the court determines that the complaint is frivolous, malicious, fails to state a claim upon which relief may be granted or seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915(e)(2)(B); *see also* 42 U.S.C. § 1997(e), and 28 U.S.C. § 1915A(b). In conducting that analysis, a prisoner's *pro se* pleading is reviewed under a less stringent standard that those drafted by an attorney and is entitled to a

liberal construction that includes all reasonable inferences, which can be drawn from it. *Haines v. Kerner*, 404 U.S. 519 (1972).

A complaint may be dismissed as frivolous if it lacks any arguable basis in law or fact. *Neitzke v. Williams*, 490 U.S. 319, 325 (1989); *Talib v. Gilley*, 138 F.3d 211, 213 (5th Cir. 1998). "A complaint lacks an arguable basis in law if it is based on an indisputably meritless legal theory, such as if the complaint alleges a violation of a legal interest which clearly does not exist." *Harris v. Hegmann*, 198 F.3d 153, 156 (5th Cir. 1999). A review for failure to state a claim under § 1915(e)(2)(B)(ii) is governed by the same standard used to review a dismissal pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. *See Newsome v. EEOC*, 301 F.3d 227, 231 (5th Cir. 2002).

### III. DISCUSSION

A plaintiff seeking relief under 42 U.S.C. § 1983 must establish two essential elements: that the conduct complained of was committed under color of state law, and that the conduct deprived the plaintiff of rights secured by the Constitution or laws of the United States. *Hernandez v. Maxwell*, 905 F.2d 94, 95 (5th Cir. 1990). Plaintiff's pleadings fail to show that he is entitled to relief under § 1983.

### 1. Claim 1

Plaintiff's claims against the Garza Unit defendants in Claim 1 are time-barred because such claims concern events that occurred in 2007, more than two years before the pending action was filed in January, 2010.[3] In § 1983 cases, federal courts apply the forum state's general personal injury limitations, *Wallace v. Kato*, 549 U.S. 384, 386 (2007), and its

---

[3] In suits brought by prisoners, such as plaintiff, who have not paid the filing fee in advance, the defense of limitations may be raised by the court. *Harris v. Hegmann*, 198 F.3d 153, 156 (5th Cir. 1999).

coordinate tolling provisions. *Hardin v. Straub*, 490 U.S. 536 (1989). In Texas, the limitations period for personal injury claims is two years. TEX. CIV. PRAC. & REM. CODE ANN. § 16.003 (Vernon 2002).

The accrual of a cause of action under § 1983, however, is determined by reference to federal law. *Wallace*, 549 U.S. at 388. Under the federal standard, accrual occurs "when the plaintiff has a complete and present cause of action." *Id.* A plaintiff has "a complete and present cause of action" when "the plaintiff can file suit and obtain relief." *Id.*

Because plaintiff was aware of the issues at the Garza Unit in 2007, and did not file suit with respect to such issues until 2010, plaintiff's claims against defendants Pople, Chaney, Walls, Wallace, Fox, Mooneyham, Trevino, Herrerra, Mercado, and Mendoza in the present action are DISMISSED, as time-barred.

### 2. Claim 5

Plaintiff's claims against the Ramsey Unit defendants in Claim 5 are also subject to dismissal. Plaintiff complains that Ramsey Unit defendants Turrubiarte and two other members of the UCC denied him procedural due process, equal protection of the law, and that they were deliberately indifferent to his need for safety by placing him in the GRAD program on the Ramsey Unit, without affording him a UCC hearing in accordance with TDCJ policy. (Docket Entry No.1, Claim 5). Although plaintiff knew the SCC had determined that he remain in the GRAD program at its hearing in July 2002, plaintiff claims that he thought he had been transferred the Ramsey Unit for safekeeping; consequently, he was offended when he was placed in the GRAD program on the Ramsey Unit after the initial and irregular UCC meeting chaired by Turrubiarte.

To the extent that the Ramsey Unit UCC deprived him of notice and an opportunity to present or review evidence supporting a finding that he was a STG member or challenging his placement in the GRAD program, plaintiff has not identified a constitutionally cognizable liberty interest in connection with his classification either as a STG member or his placement in the GRAD program. *See Luken v. Scott*, 71 F.3d 192, 193 (5th Cir. 1995) (holding that prisoner's placement in ad-seg due to allegedly false information in his file indicating that he was a gang member did not constitute a deprivation of a constitutionally protected liberty interest). An inmate has no protected property or liberty interest in custodial classifications. *Harper v. Showers*, 174 F.3d 716, 719 (5th Cir. 1999). The classification of inmates is left to the discretion of prison officials. *McCord v. Maggio*, 910 F.2d 1248, 1250 (5th Cir. 1990). Because plaintiff lacks a constitutionally protected liberty interest in his classification status, he cannot complain of the constitutionality of the procedural devices attendant to that decision. *See Orellana v. Kyle*, 65 F.3d 29, 32 (5th Cir. 1995). To the extent plaintiff complains that the Ramsey Unit UCC did not follow prison rules or regulations with respect to the initial UCC hearing, the Fifth Circuit has held that a violation of prison rules alone is not sufficient to rise to the standards of a constitutional claim. *Myers v. Klevenhagen*, 97 F.3d 91, 94 (5th Cir.1996).

Plaintiff's complaint that he was deprived of equal protection by the cursory UCC hearing, his classification as a gang member, his placement in the GRAD program, or his placement in ad-seg, is conclusory. Plaintiff states no facts to show that he suffered disparate treatment compared with similarly situated prisoners as a result of the prison's security-related decisions. *See Martin v. Scott*, 156 F.3d 578, 580 (5th Cir. 1998).

To the extent that plaintiff complains that Ramsey Unit UCC members or the GRAD staff subjected him to a substantial risk of harm by his classification and placement in the GRAD program, he fails to state any facts to show that such defendants were aware of a specific threat to him from which they could infer that he faced a substantial risk of harm by his placement in GRAD, that they drew such inference, or that they failed to take action to protect him. *See Farmer v. Brennan*, 511 U.S. 825, 837-38 (1994); *Jones v. Greninger*, 188 F.3d 322, 326 (5th Cir. 1991) (stating that to prevail, plaintiff must show prison officials were deliberately indifferent to his need for protection). Plaintiff's pleadings show that before his transfer to the Ramsey Unit, the SCC rejected plaintiff's request for a UCC hearing and determined that he was appropriately classified and placed in the GRAD program. According to the TDCJ Offender Handbook, the SCC is the final decision-maker with respect to UCC recommendations and administrative segregation and safekeeping. TDCJ Offender Orientation Handbook, November 4, 2004, page 6.[4] Plaintiff does not have a basis for a civil rights claim for failure to protect simply because he disagrees with the classification decision made by classification officials. *See Neals v. Norwood*, 59 F.3d 530, 533 (5th Cir. 1995).

While plaintiff may have feared for his safety, he has not shown that he suffered injury as required to state a claim. Moreover, plaintiff's pleadings show that he spoke daily with Sgt. Brennan about safety concerns and complained of institutional practices and that Brennan told him that he would have to learn to trust his fellow GRAD members. (Docket Entry No.1, Claim 5). After his removal from the GRAD program, plaintiff petitioned other officers who were presumably UCC panel members about his concerns. (*Id.*). Although he claims that they did not address the specific issues he raised, he was placed in transit on September 7, 2009, and

---

[4] http://www.tdcj.state.tx.us/publications/cid/OffenderOrientationHbkNov04.pdf (viewed May 5, 2011).

thereafter, transferred to the Eastham Unit, thus avoiding any conflict with alleged gang members on the Ramsey Unit. (*Id*.).

Because plaintiff's claims against Ramsey Unit defendants are either without a factual basis or fail to allege the violation of a constitutional right, plaintiff's claims against defendants Senior Warden K. Regans, Assistant Warden Turrubiarte, Major Jackson, Assistant Regional Director Steve Massie, GRAD Sgt. Brennan, GRAD Lt. Gilbert, GRAD Sgt. Hecht and any unnamed Ramsey UCC panel member are subject to dismissal as legally frivolous pursuant to 28 U.S.C. § 1915(e)(2)(B).

### 3. Administrators

Plaintiff complains that TDCJ-CID administrators failed to address or resolve various issues and concerns while he was confined on the Garza, Connally, and Ramsey Units of TDCJ-CID. Although plaintiff's claims against such administrators at the Garza and Connally Units have been dismissed, the Court notes that plaintiff's exhibits show that administrators D. Mooneyham,[5] B. Trevino,[6] Guy Smith,[7] Myra Walker,[8] V. Barrow,[9] L. Richey,[10] V.L. Brisher,[11]

---

[5] *See* Step 1 Grievance Number 2007092176.

[6] *See* Step 2 Grievance Number 2007092176.

[7] *See* Step 2 Grievance Number 2009117349; Step 2 Grievance Number 2008156035, Step 2 Grievance Number.2008182720, Step 2 Grievance Number 2008190825, Step 2 Grievance Number 2009164319; and Step 2 Grievance Number 2009171009.

[8] *See* Step 2 Grievance Number 2008145286; Step 2 Grievance Number 2009175453.

[9] *See* Step 2 Grievance Number 2008109760, 2008162028; Step 2 Grievance Number 2009187126; Step 2 Grievance Number 2009191754; Step 2 Grievance Number 2009218043.

[10] *See* Step 2 Grievance Number 2008200977.

[11] *See* Step 2 Grievance Number 2008130026.

J. Garcia,[12] Cheryl Lawson,[13] K.J. Reagans,[14] Warden Turrubiarte,[15] and Steve Massie[16] responded to grievances that plaintiff filed regarding various issues. To the extent that plaintiff complains of the failure of these or any other TDCJ administrators to respond favorably to his grievances, the Court notes that plaintiff does not have a federally protected liberty interest in having grievances resolved to his satisfaction. *See Geiger v. Jowers*, 404 F.3d 371, 374 (5th Cir. 2005). Moreover, plaintiff fails to show that these defendants were personally involved in an act causing the deprivation of his constitutional rights or that their action or inaction was connected to any constitutional violation. *Baker v. Putnal*, 75 F.3d 190, 199 (5th Cir. 1996).

Accordingly, plaintiff's claims against these defendants are subject to dismissal.

## IV. MOTION TO AMEND/SUPPLEMENT

Plaintiff also seeks to dismiss several Connally Unit defendants and to supplement his original complaint with allegations of constitutional violations against new defendants. (Docket Entry No.30). The Court will grant plaintiff's "Motion to Voluntarily Dismiss/Add Defendants and to Alter Original Complaint," in part, and deny the motion, in part, as follows:

> 1. To the extent that plaintiff seeks to dismiss specific defendants at the Connally Unit and retain others, such motion is DENIED, AS MOOT. The claims against all Connally Unit defendants have been dismissed.

---

[12] *See* Step 2 Grievance Number 2008054602; Step 2 Grievance Number 2009178767.

[13] *See* Step 2 Grievance Number 2009205411.

[14] *See* Step 1 Grievance Number 2009218043; Step 1 Grievance Number 2009221355.

[15] *See* Step 1 Grievance Number 2010004600.

[16] *See* Step 2 Grievance Number 2010004600.

2. To the extent that plaintiff seeks to dismiss TDCJ Access to Courts Administrator V. Barrow and, an unnamed Assistant Warden as defendants in this case, such motion is GRANTED, to the extent that any live claims against such defendants remain.

3. To the extent that plaintiff seeks to add new defendants and claims "pertaining to due process, conditions of confinement, and medical," which he claims are still continuing, such motion is DENIED. Rule 15(d) of the Federal Rules of Civil Procedure authorizes the Court to permit a party "to serve a supplemental pleading setting out any transaction, occurrences, or event that happened after the date of the pleading to be supplemented. FED. R. CIV. PROC. 15(d). A supplemental pleading may bring in new claims and parties when the subsequent events alleged stem from original cause of action. *Griffin v. County Sch. Bd. of Prince Edward County*, 377 U.S. 218, 226-27 (1964). Although many of the persons plaintiff seeks to add as defendants have provided medical care to him in the past and continue to provide or supervise his medical care at the Eastham Unit or in Galveston, through Eastham Unit providers, plaintiff states no facts to show that the events of which he complains with respect to these new parties stem from the claims addressed by this Court. Accordingly,

   a. The Court DENIES plaintiff's request to supplement this complaint by adding as a party several UTMB medical providers including Dr. Roger D. Soloway, Dr. David Parr, PA Monica Pickthall, and Dr. Sonstein, who provided or supervised plaintiff's medical care while he was confined at various TDCJ Units.

   b. The Court also DENIES his request to add as defendants Eastham Unit medical providers Dr. Williams, Dr. Smith, P.A. Powers, Practice Manager Shanta Crawford, Practice Manager Mr. Roberts, and to add SCC member Mrs. Thompson, Eastham Unit Major Fisher, Eastham Unit L.J. Jefferson, STG Director Sigifredo Snachez, and Eastham STG Officer Haynes.

   c. The Court further DENIES plaintiff's request to add Russell B. Bailey as a defendant; plaintiff states no claims against Bailey other than a vague reference to the conditions related to the GRAD program.

## V. CONCLUSION

Based on the foregoing, the Court ORDERS the following:

1. Plaintiff's complaint is DISMISSED with prejudice pursuant to 28 U.S.C. § 1915(e)(2)(B). All claims against all defendants are DENIED.

2. Plaintiff's Motion to Voluntarily Dismiss/Add Defendants and to Alter Original Complaint (Docket Entry No.30) is GRANTED, in part, and DENIED WITHOUT PREJUDICE, in part, in accordance with the rulings previously noted.

3. Plaintiff's "Motion for Emergency Injunction" (Docket Entry No.31) is DENIED. The persons from whom plaintiff seeks relief are not parties to this suit.

4. Plaintiff's Motion for a Copy of the Record (Docket Entry No.33) is DENIED. Most of plaintiff's exhibits and attachments have not been scanned and are part of the Court's permanent record. This Court is not a copy service for inmates, regardless of their indigent status. Copies of unscanned documents in the record are $0.50 per page. Plaintiff may inform the Clerk the papers that he needs copied. The Clerk will tell him the number of pages. Payment is required before copies are sent.

5. All other pending motions are DENIED.

The Clerk will provide a copy of this order by facsimile transmission, regular mail, or e-mail to the parties and to the TDCJ - Office of the General Counsel, Capitol Station, P.O. Box 13084, Austin, Texas, 78711, Fax: 512-936-2159.

SIGNED at Houston, Texas, this 18th day of May, 2011.

_____
MELINDA HARMON
UNITED STATES DISTRICT JUDGE